# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

FREDERICK GEAN GOODMAN,
ADC #118555                                                                                          PLAINTIFF

V.                                      5:15CV00070 BSM/JTR

RONALD CHISM,
SATP Counselor,
Tucker Unit, Arkansas Department of Correction, et al.           DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Brian S. Miller. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff, Frederick Gean Goodman ("Goodman"), has filed this *pro se* § 1983 action alleging that Defendants Program Leader Santrice Kearney ("Kearney"), Program Leader Curtis Corbin ("Corbin"), and Program Unit Coordinator Ronald Chism ("Chism") racially discriminated and retaliated against him when they removed him from the Substance Abuse Treatment Program ("SATP") at the Tucker Unit.[1] *Docs. 1 & 7.*

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.[2] *Docs. 50, 51, & 52.* Goodman has filed a Response. *Doc. 58.*

Before reaching the merits of the Motion for Summary Judgment, the Court will review the relevant facts giving rise to Goodman's claims:

1. On April 8, 2014, Goodman was admitted into the SATP at the Tucker

---

[1] The Court has previously dismissed, without prejudice, all other claims raised by Goodman. *Docs. 11 & 30*

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

Unit.[3] During the SATP, Goodman participated in "group therapy, individual counseling, didactic educational classes, role play, group interaction, community interaction, peer confrontation, peer recommended sanctions, written class assignments, and homework." *Doc. 52, Exs. B, C, & D.*

2.   During the next several weeks, Goodman had an "altercation" with his roommate, engaged in unspecified "disruptive" behavior, and had a "difficult time" getting along with other inmates. Kearney counseled Goodman at least once about his inappropriate conduct. However, Goodman continued to have problems interacting with other inmates in the SATP. *Doc. 52, Ex. B at 3.*

3.   On May 15, 2014, Goodman was placed on a "back off contract," that prohibited him from interacting with unspecified SATP participants due to his "intensively negative interactions" with them. *Id. at 4.*

4.   On June 5, 2014, Kearney met with Goodman, who admitted to having problems dealing with other prisoners and engaging in other unspecified "inappropriate behavior." *Id. at 4.*

5.   On or about July 4, 2014, Goodman, who is Caucasian, admitted to Chism that he had made "racial slurs toward other inmates." As punishment, Chism suspended Goodman for seven days. *Doc. 52, Ex. D at 3.*

---

[3] At that time, there were forty-five inmates in the SATP at the Tucker Unit. Those inmates lived in a separate barrack containing two-man rooms, instead of cells. *Doc. 52, Ex. B.*

6.     On July 11, 2014, Goodman, Kearney, and Chism signed a "behavior contract." In that document, Goodman *admitted* to making racial slurs and refusing to share his room with an African-American prisoner. Goodman was then allowed to reenter the SATP on the condition that he no longer make any racial slurs. Goodman also acknowledged that he would receive progressive sanctions, or be terminated from the program, if he continued to engage inappropriate conduct. *Doc. 52, Exs. B, D, & E.*

7.     On July 14, 2014, Goodman complained that his roommate, who was African-American, was making sexual remarks and advances toward him. Kearney investigated the matter and removed the roommate from the SATP. *Doc. 52, Exs. B & F.*

8.     On July 22, 2014, Goodman attended a group therapy session conducted by Corbin. During the session, inmates were encouraged to confront each other about their negative behaviors. *Doc. 52, Ex. C.*

9.     On July 24, 2014, Goodman got into an argument with another prisoner in the program. As a result, Kearney conducted a "focus group," during which Goodman was required to sit quietly and listen to members of the group discuss his behavior. Kearney had to stop the group because Goodman talked over other inmates, became disruptive, and refused to abide by group rules. *Doc. 52, Ex. B.*

10. Later that day, Kearney and Goodman signed a second "behavior contract," in which Goodman admitted to receiving multiple write-ups, inciting negative behavior, and failing to adhere to program sanctions. Goodman then agreed to complete a seven-day "shut down," which required him to sit quietly in his room and read his program materials. Goodman did not do so. Instead, Kearney observed him walking through the barracks and sleeping. *Id., Ex. G.*

11. On or about July 31, 2014, Goodman's "shut down," ended and he resumed SATP activities. However, Goodman continued to violate SATP rules by sleeping during program hours, failing to keep his room in order, entering another inmate's room without permission, and attempting to interact with prisoners on back off contracts. *Id. Ex. B.*

12. On August 1, 2014, Goodman sent Kearney an affidavit complaining that Corbin had "no control" during the July 22, 2014 group therapy session. Specifically, Goodman alleged that he was cursed and verbally abused by inmates during that session.[4] *Doc. 1 at 22-24.*

13. On August 8, 2014, Kearney recommended that Goodman be terminated from the SATP, pursuant to ADC Administrative Directive 12-32, due to his repeated

---

[4] In contrast, Corbin alleges, in his sworn affidavit, that he "did not observe any inappropriate or improper behavior taking place" during the July 22, 2014 group therapy session and that he properly conducted that session according to SATP rules and procedures. *Doc. 52, Ex. C at 5.*

rule violations, lack of participation, and "overall failure to make adequate progress in the program."[5] Chism and Corbin agreed with Kearney's recommendation, and Goodman was terminated from the program. *Doc. 52, Exs. B, C, D, & I.*

14.     On the same day, Kearney issued Goodman a major disciplinary for refusing to properly participate in the SATP.[6] A non-party disciplinary hearing officer later found Goodman guilty of the charge, and as punishment, reduced Goodman's class. *Doc. 52, Exs. B & J.*

15.     During the four-month period that Goodman was in the SATP, eleven African-American and four Caucasian prisoners were removed from the program. Throughout 2014 and 2015, fifty African-American and forty-five Caucasian prisoners were removed from the SATP. *Doc. 52, Ex. D.*

## II. Discussion

### A.    Official Capacity Claims

Monetary damages are the only form of relief Goodman seeks in this lawsuit. However, the doctrine of sovereign immunity precludes him from obtaining monetary damages against Defendants in their official capacities. *See Zajrael v. Harmon*, 677

---

[5] ADC Administrative Directive 12-32 § IV(M) authorizes the SATP staff to remove an inmate from the program if he "fails to make adequate progress for three consecutive months." *Doc. 52, Ex. H.*

[6] ADC Administrative Directive 12-32 § IV(J) provides that an inmate who fails to complete the SATP "*shall* receive a disciplinary." *Id.* (emphasis added).

F.3d. 353, 355 (8th Cir. 2012); *Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005). Thus, Goodman's claims against Defendants, in their official capacities, should be dismissed, with prejudice.

**B.     Individual Capacity Claims**

Qualified immunity protects government officials from liability for monetary damages in a § 1983 action unless, at the time of the alleged violation, their conduct violated a clearly established federal statutory or constitutional right of which a reasonable person would have known. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 736( 2011); *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016).  To "overcome the defense of qualified immunity," Goodman must show that: (1) the facts, viewed in the light most favorable to him, demonstrate the deprivation of a constitutional right; and (2) the constitutional right was clearly established at the time of the deprivation.[7] *Saylor,* 812 F.3d at 643; *Livers v. Schneck*, 700 F.3d 340, 350 (8th Cir. 2012).

Keeping these principles in mind, the Court will now determine whether the facts, viewed in the light most favorable to Goodman, demonstrate that Kearney,

---

[7] The Eighth Circuit has recently "rejected attempts by district courts to enter truncated orders that do not provide a thorough determination of the defendants' claim of qualified immunity." *Robbins v. Becker*, 715 F.3d 691, 694 (8th Cir. 2013). In particular, a trial court cannot deny qualified immunity simply because there are material factual disputes. *Id.* Instead, a trial court must determine whether the facts, *viewed in the light most favorable to the plaintiff*, establish a constitutional violation, and if so, whether the constitutional right in question was clearly established at the time of the alleged violation. *Id; Saylor,* 812 F.3d at 643-47.

Chism, and Corbin violated his constitutional rights by racially discriminating or retaliating against him.

### 1. Racial Discrimination

Goodman alleges that Kearney, Chism, and Corbin racially discriminated against him by wrongfully removing him from the SATP. To prevail on that claim, Goodman must prove that they purposefully treated him differently than similarly situated inmates based on his race. *See Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 815 (8th Cir. 2008); *Lewis v. Jacks*, 486 F.3d 1025, 1028–29 (8th Cir. 2007).

It is *undisputed* that, while Goodman was in the SATP, he had numerous "intensively negative interactions" with other prisoners, engaged in "inappropriate behaviors," used racially offensive language, made racial slurs, and failed to comply with his behavioral sanctions. Goodman has not pointed to any African American prisoners who were allowed to remain in the SATP despite engaging in similarly disruptive and recalcitrant behavior.[8] In fact, Goodman *concedes* that Kearney

---

[8] Instead, Goodman contends that, in a few *isolated incidents,* African-American prisoners were not punished for violating SATP rules. *Docs. 1 & 58.* For instance, he contends that: (1) inmate Willis was not sanctioned for having his hands in his pants and listening to a radio; (2) inmate West was not punished for refusing to room with Goodman; and (3) inmate Smith was not punished for threatening Goodman. *Docs. 1 & 58.* However, Goodman has not offered *any evidence* to support his bare allegation that any of these alleged SATP rule violations actually occurred. More importantly, Goodman does not contend that any of these African-American prisoners *repeatedly* violated SATP rules or *consistently* engaged in the type of disruptive and uncooperative behavior that caused him to be removed from the SATP. Thus, they are not valid comparators. *See Woods v. Ark. Dept. of Corr.,* Case No. 08-2270, 2009 WL 1406635 at *3 (8th Cir. May 21, 2009) (unpublished decision) (finding no evidence of discrimination when an plaintiff's "proffered

removed his African-American roommate from the SATP for engaging in sexually inappropriate behavior. *See Klinger v. Dept. of Corrs.*, 31 F.3d 727, 733 (8th Cir. 1994) (dismissing a prisoner's discrimination claim when there was no evidence that she was treated differently than similarly situated inmates).

Additionally, Goodman has *not presented any evidence* demonstrating that Kearney, Chism, or Corbin acted with a racial animus.[9] *See Lewis*, 486 F.3d at 1028–29 (explaining that, to avoid summary judgment, a prisoner must "identify affirmative evidence from which a jury could find proof of . . . race discrimination"). To the contrary, it is *undisputed* that Defendants gave Goodman multiple opportunities to correct his behavior so that he could remain in the SATP. Finally, Goodman's assertion of racial discrimination is clearly contradicted by the *undisputed* fact that, in 2014 and 2015, *more African-Americans than Caucasians* were removed from the SATP at the Tucker Unit. *Id.*

Because Goodman does not have any evidence that Kearney, Chism, or Corbin violated his constitutional right to be free from racial discrimination, they are entitled

---

comparators were not similarly situated in all relevant respects"); *Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) (explaining that "state actors may treat dissimilarly situated people dissimilarly without running afoul" of the equal protection clause); *Klinger v. Dept. of Corrs.*, 31 F.3d 727, 733(8th Cir. 1994) (explaining that "different treatment of dissimilarly situated persons does not violate the equal protection clause").

[9] In contrast, Goodman signed a behavior contract *admitting* that he used racial slurs and refused to share his room with an African-American inmate. *Doc. 52, Ex. 5.* Thus, the only evidence in the record is that Goodman, *and not any of the Defendants*, engaged in racially hostile behavior.

to qualified immunity and that claim against them should be dismissed, with prejudice.[10]

### 2. Retaliation

Goodman alleges that Kearney, Corbin, and Chism removed him from th SATP in retaliation for him complaining about his roommates' sexually inappropriate behavior and complaining about the way Corbin conducted group therapy sessions.[11] To succeed on that claim, Goodman must prove that: (1) he engaged in protected activity; (2) Kearney, Corbin, and Chism took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and (3) retaliation was the actual motivating factor for the adverse action. *See Lewis,* 486 F.3d at 1028 (8th Cir. 2007); *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004).

Goodman had a constitutionally protected right to complain about his roommate's behavior and how Corbin conducted groups sessions. *See Lewis*, 486 F.3d

---

[10] Because there is *no evidence of a constitutional violation*, there is no need for the Court to address the second step of the qualified immunity analysis, *i.e.*, whether Goodman's constitutional right to be free from racial discrimination was clearly established in August of 2014. *See Davis v. Hall,* 375 F.3d 703, 712 (8th Cir. 2004).

[11] It is unclear whether Goodman is also claiming that his August 2014 disciplinary conviction was retaliatory. To the extent that he is, that claim fails, as a matter of law, because: (1) ADC Admin. Dir. 12-32 § IV(J) *requires* a disciplinary conviction whenever a prisoner is removed from the SATP; and (2) the *non-party* disciplinary hearing officer's determination that Goodman failed to properly comply with SATP rules was supported by "some evidence." *See Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014) (holding that a retaliatory disciplinary claims fails, as a matter of law, if it is supported by "some evidence"); *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994) (explaining that a disciplinary decision made by an impartial decision maker and supported by some evidence "essentially checkmates a retaliation claim").

at 1029 (explaining that prisoners have a constitutionally protected right to complain about the conditions of their confinement); *Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995) (same). Additionally, the parties agree that termination from the SATP is adverse action that would chill a person of ordinary firmness from making such complaints. Thus, the relevant inquiry is whether Goodman has any evidence that retaliation was the actual motivating factor for his removal from the SATP.

Goodman's contention that Kearney removed him from the SATP to retaliate against him for complaining about his roommate's sexually inappropriate behavior is *nonsensical* because it is *undisputed* that she found his allegations *to have merit and removed the roommate from the SATP*.[12] Goodman has not explained how that incident could have somehow motivated Kearney to retaliate against him. *Lewis*, 486 F.3d at 1025 (explaining that, to avoid summary judgment, a prisoner must present "affirmative evidence of a retaliatory motive"); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (holding that mere speculative or conclusory allegations are insufficient to establish a retaliation claim).

Similarly, Goodman did *not* complain about either Kearney or Chism in his August 1, 2014 affidavit. *See Antonelli v. Tipton,* Case No. 08-3123, 2009 WL 4825169 (8th Cir. Dec. 16, 2009) (unpublished decision) (affirming the dismissal of

---

[12] Goodman does *not* contend that either Chism or Corbin were involved in the removal of his roommate from the SATP.

a prisoner's retaliation claim because he failed to allege that the named defendants were involved in or affected by his grievances); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (affirming the dismissal of a retaliation claim where a prisoner failed to allege sufficient facts from which a retaliatory animus could be inferred).

Instead, in August 1, 2014 affidavit, Goodman complained only about Corbin's alleged failure to properly control group therapy sessions. *Arguably*, that complaint could have motivated Corbin to remove Goodman from the SATP seven days later, on August 8, 2014. However, the Eighth Circuit has clarified that retaliation must have been the "actual motivating factor," and that the adverse action would not have occurred "but for a retaliatory motive." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012); *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009). In other words, the prisoner cannot prevail if the adverse action was taken for a legitimate reason, as well as for an improper retaliatory motive. *Id.; Webb v. Hedrick*, Case No. 09-2896, 2010 WL 4366438, *1 (8th Cir. Nov. 5, 2010) (unpublished opinion) (explaining that a prisoner cannot prevail "if retaliation was one factor" in the defendants' decision); *Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991) (rejecting a retaliation claim when retaliation was only one of the factors leading to the inmate's transfer). As previously discussed, there is abundant evidence demonstrating that Goodman was terminated from the SATP for repeatedly violating the rules and failing

to interact appropriately with other participants. Thus, Goodman cannot prove that retaliation was the actual motivating factor for his termination.

Because Goodman does not have sufficient evidence that Kearney, Corbin, or Chism violated his constitutional right to be free from retaliation, they are entitled to qualified immunity and that claim should be dismissed, with prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment *(Doc. 50)* be GRANTED, and that Goodman's racial discrimination and retaliation claims against Kearney, Chism, and Corbin be DISMISSED, WITH PREJUDICE.

Dated this 1st day of August, 2016.

_____
UNITED STATES MAGISTRATE JUDGE